## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CURTIS JAMES JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SKIATOOK, OKLAHOMA; | ) | Case No. 25-cv-00110-SH |
| JERRY BULLARD, in his individual | ) | |
| capacity; WES HENDERSON, in his | ) | |
| individual capacity; and BILLY | ) | |
| WAKEFIELD, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court are dismissal motions filed by Defendants Jerry Bullard and Wes Henderson, as well as by Billy Wakefield and the City of Skiatook.[1]  Considering the arguments made therein, the Court finds that Plaintiff has failed to allege any facts plausibly stating an excessive-force claim against Henderson, and that his claims against Bullard were premature when filed.  Moreover, Plaintiff's false arrest claims are precluded by his guilty plea in state court.  The supervisory and municipal liability claims against Wakefield and the City fail for lack of any underlying constitutional violation.  Those claims were also pled too vaguely to survive a motion to dismiss.  Plaintiff's claims are, therefore, dismissed without prejudice and subject to a motion to supplement or amend.

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a).  (Dkt. No. 25.)

## Factual Background

Taking judicial notice where appropriate and accepting the factual allegations in the complaint as true, viewed in the light most favorable to the nonmoving party, Plaintiff alleges as follows:

On the morning of March 10, 2023, Plaintiff Curtis James Johnson ("Johnson") was in Skiatook, Oklahoma, visiting family. (Dkt. No. 3 ¶ 9.) Shortly before 9:00 a.m., Johnson was driving toward his home in Broken Arrow. (*Id.* ¶ 10.) Skiatook Police Department ("SPD") Sergeant Jerry Bullard ("Bullard") saw Johnson and began following him. (*Id.* ¶¶ 11–12.) Bullard was driving an unmarked pickup truck with a camper shell. (*Id.* ¶ 12.) He had been lying in wait for Johnson due to a department-wide text message received the day prior, which alleged Johnson was under the influence of narcotics and in possession of a firearm. (*Id.* ¶¶ 11, 55.)

As he drove, Johnson was talking to a friend on speakerphone. (*Id.* ¶ 13.) The friend thought he heard sirens and asked Johnson if he was being pulled over by police. (*Id.*) Johnson then noticed Bullard's pickup driving through residential yards directly beside him on his passenger side. (*Id.* ¶ 14.) Bullard pulled in front of Johnson, and Johnson stopped his car. (*Id.*) Johnson alleges that, before this, he was unaware a law enforcement vehicle had been behind him.[2] (*Id.*)

Before Johnson could place his car in park, an unnamed individual violently jerked open his door, and Johnson was surrounded by six police vehicles and multiple SPD officers. (*Id.* ¶ 15.) Johnson alleges, at this point, there "was still no probable cause to arrest [him] on suspicion of any crime." (*Id.* ¶ 16.)

---

[2] The Court discusses below whether Johnson can rely on this and other allegations that are contrary to his state-court guilty pleas.

Unnamed SPD officers then reached into Johnson's vehicle and grabbed him while he was wearing his seatbelt.  (*Id.* ¶ 17.)  They ordered him to exit the vehicle, but he could not do so while he was being held by officers and restrained by his seatbelt.  (*Id.*)  Bullard then struck Johnson in the forehead with the stock of his rifle, stunning him.  (*Id.* ¶ 18.)  Unnamed persons forcibly removed Johnson from the vehicle while he "was still experiencing the effects of the blunt force trauma."  (*Id.* ¶ 19.)  Several unnamed officers struck Johnson with their knees and fists.  (*Id.*)  Johnson alleges this occurred before he could submit and that "he did not strike or grab at any officer at any point."  (*Id.*)  Unnamed officers then deployed tasers into Johnson's torso.  (*Id.* ¶ 20.)  Johnson alleges this occurred even though "he did not fail to cooperate with, and did not assault[,] the officers."  (*Id.*)

Johnson was subsequently arrested and, at the time, the alleged offenses were (1) speeding in a school zone; (2) eluding or attempting to elude a peace officer; (3) resisting an officer by means of force or violence; (4) obstructing an officer; and (5) battery or assault and battery of an officer.  (*Id.* ¶ 21; Dkt. No. 22-1 at 1.[3])  Defendant Wes Henderson ("Henderson") signed the probable cause affidavit.  (Dkt. No. 22-1 at 2.)

Johnson was eventually charged with (1) battery or assault and battery on a police officer; (2) threatening to perform an act of violence; (3) resisting an officer; (4) obstructing an officer; and (5) eluding or attempting to elude an officer.  (Dkt. No. 22-2.) Johnson was represented by counsel in the state criminal case and waived his right to a preliminary hearing.  (Dkt. Nos. 22-6 & 22-7.)  Johnson pled guilty to the first and last charges (assaulting an officer and eluding an officer), and the state court found a

---

[3] Page numbers refer to those in the court-provided header.

factual basis for these pleas and accepted them.  (Dkt. No. 22-3.)  The remaining counts were dismissed.  (Dkt. No. 3 ¶ 21; Dkt. No. 22-4.)  Based on the guilty pleas, the state court entered a deferred judgment and sentence for two years, during which time Johnson would be on Department of Corrections probation and would be required to comply with conditions that included completing a substance abuse evaluation, following all recommendations from that evaluation, and continuing to participate in mental health treatment.[4]  (Dkt. No. 22-4 at 1.)

During the events alleged in the complaint, Defendant City of Skiatook (the "City") provided and employed the SPD, and Defendant Billy Wakefield ("Wakefield") was the SPD's chief of police.  (Dkt. No. 3 ¶¶ 2, 5.)

## Procedural Background

Johnson asserts two claims against the defendants:  (1) excessive force under the Fourth and Fourteenth Amendments, violating 42 U.S.C. § 1983; and (2) wrongful arrest under the Fourth and Fourteenth Amendments, again violating § 1983.  (*Id.* ¶¶ 24–77.)

Defendants now move to dismiss.  Defendants Bullard and Henderson argue (1) the complaint fails to allege specific facts showing excessive force by Henderson (Dkt. No. 22 at 14–19); (2) Johnson's claims are barred or precluded by his prior guilty pleas (*id.* at 19–31); and (3) Bullard and Henderson are entitled to qualified immunity (*id.* at 31–32).  Defendants Wakefield and the City, meanwhile, argue (1) Johnson's supervisory and municipal liability claims fail, because he has not alleged an underlying constitutional violation (Dkt. No. 23 at 13–14); (2) Johnson fails to allege Wakefield violated his

---

[4] The period of deferment ended after this case was filed, and the state court ordered Johnson's guilty plea expunged.  *See* Order, Case No. CF-2023-72 (Dist. Ct. Osage Cnty., Okla., Dec. 3, 2025).

constitutional rights sufficiently to invoke supervisory liability (*id.* at 14–19); and (3) Johnson fails to state a claim for municipal liability against the City (*id.* at 19–25).

## Analysis

### I.    Standard of Review

To survive a 12(b)(6) motion to dismiss, "a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  All such reasonable inferences are resolved in the plaintiff's favor. *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citation modified).  The practice of accepting allegations as true does not apply to legal conclusions, however, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  *Iqbal*, 556 U.S. at 678.

In addition to the complaint, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).  The Court may also take judicial notice of facts that are a matter of public record. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *Rose v. Utah*

*State Bar*, 471 F. App'x 818, 820 (10th Cir. 2012) (noting this includes state-court filings).[5]

These documents are only considered to show their contents, not to prove the truth of the

matters asserted therein.[6]  *Tal*, 453 F.3d at 1264 n.24.  Here, the Court considers the

materials from Plaintiff's underlying state-court prosecution referenced in the complaint,

as well as those attached to Defendants' motions.  (Dkt. Nos. 22-1–22-7 & 23-1–23-4); *see*

*also Cato v. Hargrove*, No. 19-CV-0087-GKF-FHM, 2020 WL 2748485, at *5 (N.D. Okla.

May 27, 2020) (considering state-court criminal proceedings where defendant argued

§ 1983 claim was barred by prior conviction).

## II.   **Henderson and Bullard**

### A.   **Excessive Force**

As discussed below, Johnson has failed to plead any facts that plausibly state a

claim of excessive force against Defendant Henderson.  This means Henderson is entitled

to qualified immunity, because Johnson has failed to plead that he violated a

constitutional right.  As for Defendant Bullard, viewing the facts as they existed at the

time of the complaint, Johnson's claims would necessarily invalidate his state-court

deferred sentence and, therefore, such claims are barred as pled.

---

[5] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

[6] The Court, therefore, does not treat as true that Henderson received a message from another officer regarding Johnson stalking or harassing Brandi Johnson; that Johnson had been described as experiencing paranoia, being awake for three days due to narcotics, and possibly being armed and suffering a mental episode; that Johnson was known for assaulting a correctional officer based on a previous arrest encounter; that Johnson was going to his ex-wife's house and was threating to fight whoever confronted him; or that Johnson took certain actions during the arrest.  (*See* Dkt. No. 22-1 at 2; *see also* Dkt. No. 22 at 10–11 (Defendants' motion treating these facts as true); Dkt. No. 23 at 9–10 (same).)

### 1.    Generally

The "Fourth Amendment recognizes the right of the police, in making an arrest or a stop, 'to use some degree of physical coercion or threat thereof to effect it.'" *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  But this physical coercion has limits.  A claim that such force was excessive constitutes a claim of Fourth Amendment seizure and is subject to the Amendment's reasonableness requirement.  *Est. of Larsen v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008).  This includes any force used leading up to or during the arrest.  *Est. of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014).

"To establish a constitutional violation, the plaintiff must demonstrate the force used was objectively unreasonable."  *Est. of Larsen*, 511 F.3d at 1259.  An assessment of objective reasonableness involves considering "whether the totality of the circumstances justified the use of force."  *Havens v. Johnson*, 783 F.3d 776, 781 (10th Cir. 2015).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.  This necessitates attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*

### 2.    Pleading and Qualified Immunity

Where, as here, a defendant raises qualified immunity, the plaintiff must plead facts showing "(1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct."  *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021).  Plaintiff must allege enough facts "to show he plausibly, not just speculatively, meets both inquiries."  *Est. of*

*Israel v. City & Cnty. of Denver*, 643 F. Supp. 3d 1221, 1228 (D. Colo. 2022).  Plaintiff need not include "all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law," but he must provide "enough allegations to give the defendants notice of the theory under which" the claim is made.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (emphasis added) (internal quotations omitted).

As is the case in Johnson's complaint, in § 1983 claims, "defendants often include the government agency and a number of government actors sued in their individual capacities."  *Id.* at 1249–50.  This means "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state."  *Id.* at 1250.  Collective and generalized allegations—using generic labels like "defendants" or "health care providers"—are "insufficient to overcome an assertion of qualified immunity at the motion-to-dismiss stage."  *Walker v. Mohiuddin*, 947 F.3d 1244, 1249–50 (10th Cir. 2020).

### 3. Johnson Fails to Plead an Excessive Force Claim Against Henderson

For Henderson, there are no facts alleged in the complaint from which the Court could discern that he performed any actions at all during Johnson's arrest, much less that he used objectively unreasonable force.[7]  Other than a few specific acts by Bullard, the complaint mostly alleges that unnamed persons or "officers" took various actions during

---

[7] Henderson's name is not mentioned when Johnson describes the events during his arrest.  (Dkt. No. 3 ¶¶ 9–23.)  His name first comes up when Johnson begins to draw conclusions—"The force used on Mr. Johnson by Defendants Bullard and Henderson was excessive," etc.  (*See, e.g.*, *id.* ¶ 25.)

his arrest.  This is insufficient to state a claim against Henderson.  *See Walker*, 947 F.3d at 1249–50.  *Cf. Shash v. City of Pueblo*, 770 F. Supp. 3d 1279, 1293 (D. Colo. 2025) ("an officer's mere presence at the scene of an investigation does not constitute personal participation in an alleged constitutional violation" (collecting cases)).  There are simply no facts that plausibly show Henderson violated Johnson's constitutional rights, and the claim for excessive force against Henderson will be dismissed.

### 4.    Johnson's Claims Against Bullard were Premature, as Pled, under *Heck*

#### a.    The *Heck* doctrine

In *Heck*, "the Supreme Court held that a plaintiff could not bring a civil-rights claim for damages under § 1983 based on actions whose unlawfulness would render an existing criminal conviction invalid." *Havens*, 783 F.3d at 782 (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)).  Therefore, to recover for such harms, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed" or otherwise invalidated.[8]  *Heck*, 512 U.S. at 486–87.  If not, such a claim has not yet accrued and the complaint must be dismissed.  *Id.* at 487, 489–90.  When "*Heck* applies, the claim is barred as 'premature.'" *Glaser v. City & Cnty. of Denver*, 557 F. App'x 689, 697 (10th Cir. 2014) (quoting *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 556 (10th Cir. 1999)).  The Court makes this determination based on the facts as they existed at the time the complaint was filed.[9]  *See*

---

[8] The parties assume that a deferred sentence is subject to the *Heck* bar, and the undersigned does not address the issue.

[9] As such, the Court does not consider the post-filing expungement of Johnson's guilty plea.  Instead, it appears the appropriate approach to addressing post-filing events is supplementation under Fed. R. Civ. P. 15(d).  *See* 6A Wright & Miller's Federal Practice & Procedure § 1505 (3d ed. 2025) (noting "a supplemental pleading has been used for such purposes as alleging that sufficient time has elapsed to cure a premature filing" (footnote omitted)).

*Schwartz v. N.M. Corr. Dep't Prob. & Parole*, 384 F. App'x 726, 731 (10th Cir. 2010) (determining applicability of *Heck* based on whether plaintiff was still "in custody" at the time his complaint was filed); *Wingo v. Mullins*, 400 F. App'x 344, 347 n.3 (10th Cir. 2010) (appearing to apply this rule even when the plaintiff might have left custody during the pendency of the case).

"But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487; *see also St. George v. City of Lakewood*, No. 22-1333, 2024 WL 3687780, at *3 (10th Cir. Aug. 7, 2024) (unpublished) ("In other words, a civil claim is barred if it seeks to retry the same facts and legal issues from a prior case where the civil plaintiff has already been convicted beyond a reasonable doubt as a criminal defendant.").

"The purpose behind *Heck* is to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions." *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007). "The starting point for the application of *Heck* then is the existence of an underlying conviction or sentence that is tied to the conduct alleged in the § 1983 action." *Id.*

### b.    Excessive force and *Heck*

An "excessive-force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer." *Havens*, 783 F.3d at 782. "For example, the claim may be that the officer used too much force to respond to the assault or that the officer used force after the need for force had disappeared." *Id.*; *see also Hooks v. Atoki*, 983

F.3d 1193, 1201 (10th Cir. 2020) (where plaintiff alleged "several distinct uses of force," the court noted that "cases have consistently drawn a distinction between reasonable force used to subdue a suspect and unreasonable force used thereafter," even when the complaint does not mention the plaintiff's assault on officers); *Torres v. Madrid*, 60 F.4th 596, 601 (10th Cir. 2023) (*Heck* did not bar excessive force claim based on actions occurring after the underlying crime was completed).

In cases such as this one, to "determine the effect of *Heck* on an excessive-force claim, the court must compare the plaintiff's allegations to the offense he committed." *Havens*, 783 F.3d at 782. This is because, at times, an "excessive-force claim must be barred in its entirety because the theory of the claim is inconsistent with the prior conviction." *Id.* at 783.[10] This occurred in *Havens*, where the plaintiff pled guilty to attempted assault of an officer, yet—in his § 1983 claim—essentially alleged "he did nothing wrong and did not intend or attempt to injure" the officer. *Id.* Such a "version of events could not sustain the elements of attempted first-degree assault under Colorado law and the factual basis for Haven's [Alford][11] plea." *Id.* Moreover, plaintiff's complaint presented no "alternative scenario consistent with his attempted-assault conviction." *Id.* at 783–84. Plaintiff's only theory of relief was "based on his innocence, and this theory is

---

[10] For this example, the Tenth Circuit cited *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007). In *DeLeon*, the court adopted the reasoning from a prior unpublished opinion where the plaintiff claimed he "did nothing wrong, but was viciously attacked for no reason" and did not claim "that the police used excessive force after he stopped resisting arrest or . . . used excessive and unreasonable force to stop his resistance," which squarely challenged the factual determination for his conviction of resisting an officer. *Havens*, 783 F.3d at 783 (quoting *DeLeon*, 488 F.3d at 656–57).

[11] An *Alford* plea is a type of guilty plea where the defendant does not admit to committing the crime but only that he could be convicted of it. *Havens*, 783 F.3d at 784 (citing *North Carolina v. Alford*, 400 U.S. 25 (1970)).

barred by *Heck*." *Id.* at 784; *see also Carbajal v. Hotsenpiller*, 524 F. App'x 425, 428 (10th Cir. 2013) (finding claims barred by *Heck* when they "rest on [the plaintiff's] allegation that the charges for which he entered an Alford plea were false").

### c.   Johnson's plea and *Heck*

Johnson's excessive force claims against Bullard fail for the same reasons as those in *Havens*.  Under Oklahoma law, "[e]very person who, without justifiable or excusable cause knowingly commits battery or assault and battery upon the person of a police officer" shall be guilty of a crime.  Okla. Stat. tit. 21, § 649(B).  Assault means "any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another," while battery means "any willful and unlawful use of force or violence upon the person of another."  Okla. Stat. tit. 21, §§ 641–642.  Johnson was charged with committing this offense "by willfully and unlawfully striking [SPD] Officer Wes Henderson in the leg, causing him to fall on the asphalt with the intent to injure Wes Henderson, knowing that [he] was a Police Officer who was performing the duties of a Police Officer . . . ." (Dkt. No. 22-2 at 1.)  Johnson pled guilty to this charge.  (Dkt. No. 22-3.)

Just as in *Havens*, in his complaint, Johnson essentially alleges that he did nothing wrong and did not intend or attempt to injure a police officer.  (*See* Dkt. No. 3 ¶ 19 (alleging he "did not strike or grab at any officer at any point"); *id.* ¶ 20 (alleging he "did not fail to cooperate with, and did not assault the officers").)  This version of events could not sustain the elements of assault or assault and battery of a police officer under Oklahoma law and the factual basis for his plea.  *See Havens*, 783 F.3d at 783.  And, as in *Havens*, Johnson does not present an alternative scenario consistent with his assault conviction.  *See id.* at 783–84.

Because Johnson's only theory of relief is based on his innocence, and because this theory was barred by *Heck* at the time of the complaint, the claim is subject to dismissal. *See id.* at 784; *see also Moman v. Barnhart*, 623 F. Supp. 3d 1215, 1226–27 (N.D. Okla. 2022) (claim barred where plaintiff alleged force was excessive because he "did nothing wrong"); *Cato*, 2020 WL 2748485, at *6 (excessive force claim barred where the facts alleged in the complaint would "necessarily imply the invalidity of [the plaintiff's] conviction for resisting an officer"); *Valdez v. Monell*, No. 21CV–00860–CMA–KMT, 2022 WL 279626, at *5 (D. Colo. Jan. 31, 2022) (claim barred where the plaintiff basically alleged he was "the victim of an unprovoked assault by police officers," which directly challenged the factual basis for his conviction for resisting arrest); *Krebs v. Williamson*, No. 20-CV-01805-CMA-KLM, 2021 WL 4067411, at *8 (D. Colo. Aug. 12, 2021) (claim barred where plaintiff alleged the officer's force was excessive, "because it occurred when Plaintiff was, at best, passively resisting arrest," which was inconsistent with his nolo contendere plea for second degree assault); *Parkinson v. Sanderson*, No. 2:15-CV-796, 2018 WL 4688351, at *4–5 (D. Utah Sept. 28, 2018) (claim barred where plaintiff convicted of assaulting a police officer and failing to respond to police commands, which was inconsistent with his allegation that the officers' actions caused his vehicle to move); *cf. Hooks*, 983 F.3d at 1201 (excessive force claims prior to officers subduing plaintiff were subject to *Heck* when plaintiff would be required to show "he did nothing wrong," but plaintiff could pursue claims after he no longer posed a threat).

## B.    Wrongful (False) Arrest

Johnson's false arrest claims against Henderson and Bullard are precluded by his guilty plea in state court to eluding or attempting to elude a police officer.

### 1. Generally

"As a general matter, a warrantless arrest is consistent with the Fourth Amendment when there is probable cause to believe the arrestee has committed a crime." *Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* at 925 (internal quotations omitted). To state a false arrest claim, "the plaintiff must allege that the arresting officer acted without probable cause." *Howl v. Alvarado*, 783 F. App'x 815, 818 (10th Cir. 2019).

### 2. Issue Preclusion and § 1983

"The federal court must apply the state [issue preclusion][12] rules when determining whether a prior state court judgment bars litigation of an issue in a § 1983 claim." *Franklin v. Thompson*, 981 F.2d 1168, 1170 (10th Cir. 1992). In Oklahoma, issue preclusion "is applicable to all issues raised in subsequent civil litigation which were determined by a prior judgment of criminal conviction." *Id.* This means (1) the issue sought to be precluded was the same as that involved in the prior case; (2) the issue was litigated in the prior case; (3) the issue was, in fact, determined in that prior case; and (4) the determination of that issue was necessary to support the judgment in the prior case.[13] *Id.* The party against whom issue preclusion is asserted must have had "a full and

---

[12] The *Franklin* case uses the term "collateral estoppel," which is another way of saying issue preclusion. *See, e.g.*, *Keller Tank Servs. II, Inc. v. Comm'r of Internal Revenue*, 854 F.3d 1178, 1193 (10th Cir. 2017).

[13] Johnson does not argue that the "Deferment" was not a judgment in the prior criminal case, and the Court does not address this issue.

fair opportunity to litigate" the issue in the earlier proceeding. *Strong v. Laubach*, 153 F. App'x 481, 484, 491 (10th Cir. 2005) (applying Oklahoma law).

### 3.   Johnson's Plea and Issue Preclusion

Here, Johnson bases his false arrest claim on the alleged lack of probable cause for his arrest and on the allegation that he "did not attempt to evade or elude the police." (Dkt. No. 3 ¶¶ 56, 58.)  However, in the state criminal case, Johnson was charged with eluding or attempting to elude a police offer "by willfully increasing speed in an attempt to elude Jerry Bullard, a Skiatook Police Officer, in the performance of said officer's duty with [SPD] . . . and after [he] had received a visual and audible signal and a red light and a siren directing [him] to bring said vehicle to a stop from Jerry Bullard, who was driving a clearly identified official police car."  (Dkt. No. 22-2 at 2.)  Johnson was represented by counsel and does not dispute that he had a full and fair opportunity to litigate this criminal charge.  Johnson pled guilty to the eluding offense; the state court found a factual basis for the plea; and the state court accepted the plea.  (Dkt. No. 22-3.)  A guilty plea, and a "consequent adjudication of guilt thereon, estop the defendant from later disputing the validity of those charges as a basis to deny the existence of probable cause for his arrest." *Jackson v. Loftis*, 189 F. App'x 775, 779 (10th Cir. 2006) (regarding a plaintiff's § 1983 claim); *see also id.* at 780 n.3 ("many cases reflect the basic notion that a conviction, by plea or trial, that establishes probable cause for arrest . . . is conclusive on the issue in later civil rights litigation" (collecting cases)).  Considering this, Johnson is precluded from relitigating whether there was probable cause for his arrest on the eluding charge. *See also Franklin*, 981 F.2d at 1171 ("plaintiff's conviction . . . establishes the legality of the arrest and precludes relitigation of the issue in her § 1983 action").  Johnson's claims for wrongful arrest will, as such, be dismissed.

### III.    Wakefield and the City

#### A.    Johnson's Claims Against Wakefield and the City Fail for Lack of an Underlying Constitutional Violation

Johnson bases his claims against Wakefield on supervisory liability, and his claims against the City on municipal liability.  (Dkt. No. 3 ¶¶ 34–51, 62–77.)  Both claims require an underlying constitutional violation.  *See Martinez v. Beggs*, 563 F.3d 1082, 1092 (10th Cir. 2009) (noting a lack of supervisory liability "when there was no violation of [the plaintiff's] constitutional rights"); *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1191 (10th Cir. 2020) ("The general rule[14] . . . is that there must be a constitutional violation, not just an unconstitutional policy, for a municipality to be held liable."); *see also Myers v. Turn Key Health Clinics, LLC*, No. 24-5113, 2026 WL 73939, at *9 n.8 (10th Cir. Jan. 9, 2026) ("a 'failure to train claim . . . is dependent upon a predicate violation' by an individual officer" (quoting *Crowson*., 983 F.3d at 1192)).

Because Johnson's claims for the underlying violations have been dismissed, his claims against the City and Wakefield must be, too.  *See St. George*, 2024 WL 3687780, at *3–4 (affirming dismissal of municipal and supervisory liability claims where the underlying claims were dismissed under *Heck*).

#### B.    Johnson Does Not State a Claim for Failure to Train or Supervise

Even if Johnson had stated an underlying constitutional violation, Johnson's claims against the City and Wakefield based on a failure-to-train or -supervise theory of liability would fail.  *See Whitewater v. Goss*, 192 F. App'x 794, 797 (10th Cir. 2006) ("We

---

[14] Johnson does not allege a systemic failure of city polices and procedures.  *Id.* at 1191–92.

treat allegations of failure to supervise (which often may be indistinguishable from failure to train) the same way.")

Municipal liability[15] is "at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To allege liability under a failure-to-train theory, a plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *see also George ex rel. Bradshaw v. Beaver Cnty.*, 32 F.4th 1246, 1253 (10th Cir. 2022) ("a municipality's decision not to train its officers rises to the level of an official government policy under § 1983 only when the failure to train amounts to deliberate indifference to the rights of persons with whom the untrained employees come into contact" (citation modified)).

Ordinarily, this requires a "pattern of similar constitutional violations by untrained employees . . . ." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019) (internal quotation omitted) ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").  Such evidence is only unnecessary in the rare and narrow range of circumstances where "the unconstitutional consequences of a failure to train are highly predictable and patently obvious." *Id.* (citation modified).

---

[15] The parties treat the standards for failure-to-train based on municipal and supervisory liability as the same, and the Court will assume they are.

Johnson's pleading is devoid of sufficient facts to support this type of claim. He points to no other instances of similar constitutional violations by untrained employees such that the Court might find a pattern of behavior. Nor does he provide any "specific allegations of deficiencies" in SPD's training or supervision, "*e.g.*, how officers were trained, who they were trained by, or why their training was deficient." *Janson v. Regalado*, No. 24-CV-495-MTS, 2025 WL 1656657, at *6 (N.D. Okla. June 11, 2025) (internal quotation omitted) (collecting cases). Rather, Johnson simply recites certain elements of liability based on a failure to train in his excessive force and false arrest claims (differences underlined):

| **Excessive Force** | **False Arrest** |
|---|---|
| Upon information and belief, the need of additional and different training and supervision with respect to <u>the use of force</u> was so obvious to Defendant Wakefield that he was deliberately indifferent to the acts of SPD personnel, including but not limited to Defendants Bullard and Henderson. (Dkt. No. 3 ¶ 36.) | Upon information and belief, the need of additional and different training and supervision with respect to <u>probable cause and lawful arrests</u> was so obvious to Defendant Wakefield that he was deliberately indifferent to the acts of SPD personnel, including but not limited to Defendants Bullard and Henderson. (*Id.* ¶ 63.) |
| Defendant Wakefield's failure to train and supervise his subordinates directly and proximately caused violations of Plaintiff's federally protected rights . . . . (*Id.* ¶ 37.) | Defendant Wakefield's failure to train and supervise his subordinates directly and proximately caused violations of Plaintiff's federally protected rights . . . . (*Id.* ¶ 64.) |
| [T]he City has created and tolerated and maintained long-standing, unconstitutional department-wide customs . . . and failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference with respect to <u>uses of force</u>. (*Id.* ¶ 47.) | [T]he City has created and tolerated and maintained long-standing, unconstitutional department-wide customs . . . and failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference with respect to <u>probable cause determinations</u>. (*Id.* ¶ 73.) |

These claims are so broadly pled that the Court also cannot determine whether the conduct at issue falls into the narrow range of circumstances in which the unconstitutional consequences of training failures are "highly predictable" or "patently obvious." *See Janson*, 2025 WL 1656657, at *7 (finding the factual allegations too "generalized and conclusory" to support such an inference); *Parker v. Universal Prot. Serv., LP*, No. 25-CV-68-JFH-MTS, 2025 WL 1490062, at *6 (N.D. Okla. May 23, 2025) (same, finding the allegations "too bare and devoid of factual detail").

Thus, Johnson has failed to state a claim for failure to train or supervise against Wakefield or the City. The Court will now address the claims unique to each defendant.

### C.    Supervisory Liability—Wakefield

Johnson's claims of supervisory liability against Wakefield likewise fail due to his reliance on conclusory statements of policy or custom.

#### 1.    Generally

When a defendant is sued under § 1983 in his individual capacity, he may be subjected to personal liability, supervisory liability, or both. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Personal liability imposes liability on individual defendants who are personally involved in the alleged constitutional violations. *Id.* Supervisory liability imposes liability on defendant-supervisors who create, promote, or carry out policies that deprive plaintiffs of their constitutional rights. *Id.* at 1163–64. Here, Johnson asserts a claim of supervisory liability against Wakefield.[16]

---

[16] In his response brief, Johnson asserts for the first time the "Wakefield authorized and participated in" his seizure. (Dkt. No. 28 at 12.) There are no facts alleged in the complaint that support this statement, and the Court will not consider it.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also id.* at *677 (noting "the term 'supervisory liability' is a misnomer"). So, the plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). The elements of a claim for supervisory liability are: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."[17] *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010); *see also Schneider*, 717 F.3d at 767 (summarizing this as "(1) personal involvement[,] (2) causation, and (3) state of mind").

### 2. Johnson Fails to Allege Wakefield is Responsible for Any Pertinent Policy

Johnson's claims fail at step one. Typically, "conclusory statements regarding the 'policy and custom' . . . without any facts to support these statements, do not establish a policy for purposes of supervisory liability." *White v. Baldbridge*, No. 21-CV-02937-NYW-STV, 2022 WL 18356141, at *7 (D. Colo. Nov. 8, 2022) (collecting cases), *R&R adopted sub nom. White v. Baldridge*, 2022 WL 17751247 (D. Colo. Dec. 19, 2022).

---

[17] Some courts have suggested that "Fourth Amendment claims are subject to an objective reasonableness standard, and the court does not consider an actor's state of mind." *Simpson v. Little*, No. 18-CV-491-GKF-FHM, 2020 WL 33216, at *3 (N.D. Okla. Jan. 2, 2020).

Here, Johnson pleads nothing but rote recitations of the elements or bare legal conclusions in support of his allegations against Wakefield for both the excessive force and false arrest claims (differences underlined):

| Excessive Force | False Arrest |
|---|---|
| Chief Wakefield held a supervisory position with SPD and was directly involved in the creation and implementation of policies, oversight, and training of SPD employees, including concerning the use of force.  (Dkt. No. 3 ¶ 35.) | Chief Wakefield held a supervisory position with SPD and was directly involved in the creation and implementation of policies, oversight, and training of SPD employees, including concerning probable cause and lawful arrests.  (*Id.* ¶ 62.) |
| Upon information and belief, Chief Wakefield was aware that SPD Officers had a policy, practice, and/or custom of using unreasonably excessive force on compliant and subdued citizens, like Plaintiff, who posed no threat to law enforcement officers or anyone else.  (*Id.* ¶ 38.) | Upon information and belief, Chief Wakefield was aware that SPD Officers had a policy, practice, and/or custom of unlawfully arresting citizens, like Plaintiff, without probable cause.  (*Id.* ¶ 65.) |
| Upon information and belief, not only did Wakefield permit these practices to continue unabated, he also personally ensured that SPD Officers, including Bullard and Henderson, who arrested citizens without probable cause went unpunished, even when SPD supervisors brought reports of unlawful arrests to Wakefield's attention for review.  (*Id.* ¶ 39.) | Upon information and belief, not only did Wakefield permit these practices to continue unabated, he also personally ensured that SPD Officers, including Bullard and Henderson, who arrested citizens without probable cause went unpunished, even when SPD supervisors brought reports of unlawful arrests to Wakefield's attention for review.  (*Id.* ¶ 66.) |

Based on these allegations, it is unclear whether Johnson is contending that Wakefield formally promulgated a policy or practice of using excessive force on compliant citizens— or arresting without probable cause—or, instead, whether Johnson is alleging that Wakefield ensured the continued operation of well-settled customs or practices.  *See Schneider*, 717 F.3d at 770.  If the former, Johnson has pointed to no such formal policy, and, if the latter, Johnson points to no incidents other than his own which might evidence

the practices.  Overall, the Court cannot discern <u>facts</u> supporting Johnson's allegations that Wakefield, through individual action, created, implemented, or possessed responsibility for the operation of a policy that harmed Plaintiff.  *See Steele v. Okla. Dep't of Corr.*, No. CIV-15-1238-D, 2017 WL 1208668, at *4 (W.D. Okla. Mar. 31, 2017) ("Although Plaintiff also asserts such deprivation arose from active policies implemented by defendants, she does so in conclusory fashion without any supporting facts.") (dismissing § 1983 claim).

Johnson has failed to plead a plausible supervisory liability claim against Wakefield.

### D.    Municipal Liability—the City

Similar issues plague Johnson's contentions against the City.

"In enacting § 1983, Congress did not intend to subject municipalities to liability unless an official policy caused a constitutional tort." *George*, 32 F.4th at 1253.  As such, municipalities are not vicariously liable for their employee's actions, but "are responsible only for their own illegal acts . . . ." *Id*.  To prevail on his claim against the City, Johnson "must prove (1) official policy or custom, (2) causation, and (3) state of mind." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1239 (10th Cir. 2020) (citation modified).

The first element may be satisfied by policies arising from formal regulations or statements, informal customs amounting to widespread practice, decisions of employees with final policymaking authority, ratification by final policymakers of subordinates' decisions, or a deliberately indifferent failure to adequately train or supervise.  *Id*. at 1239–40.  For the second element, "*Monell* and its progeny clearly stand for the proposition" that liability may be imposed "where there exists an 'affirmative' or 'direct

causal' link between a municipal person's adoption or implementation of a policy and a deprivation of federally protected rights . . . ." *Dodds*, 614 F.3d at 1202 (referencing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).  For the third element, the plaintiff must "demonstrate the municipality's inaction resulted from 'deliberate indifference to the rights' of the plaintiff." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (quoting *City of Canton*, 489 U.S. at 389).

Again, Johnson has failed to plead even the most basic facts that would support a conclusion that an official policy or widespread practice adopted by the City regarding use of excessive force or arrests without probable cause existed such that there was an affirmative link between this policy and Johnson's constitutional injuries.  For both the excessive force and false arrest claims, Johnson alleges as follows (differences underlined):

| **Excessive Force** | **False Arrest** |
|---|---|
| Prior to the excessive use of force on Plaintiff, there have been other instances of constitutional deficiencies within the SPD that the City was aware of, but failed to alleviate.  (Dkt. No. 3 ¶ 45.) | Prior to the wrongful arrest of Plaintiff, there have been other instances of constitutional deficiencies within the SPD that the City was aware of, but failed to alleviate.  (*Id.* ¶ 71.) |
| There is an affirmative link between the deprivation of Plaintiff's constitutional rights and SPD policies, practices and/or customs which the City promulgated, created, implemented, and/or possessed responsibility for.  (*Id.* ¶ 44.) | There is an affirmative link between the deprivation of Plaintiff's constitutional rights and SPD policies, practices and/or customs which the City promulgated, created, implemented, and/or possessed responsibility for.  (*Id.* ¶ 70.) |

These are not facts that would allow the Court to plausibly find the City adopted a policy that led SPD officers to violate Johnson's rights.  There are no facts supporting the existence of a formal regulation, that decisions of subordinates might have been ratified, or that decisions might have been made by employees with policymaking authority.

Moreover, Johnson has alleged no facts regarding incidents other than this one, which could point to a pattern or practice of constitutional injury.  Single, isolated incidents of constitutional violations are generally "not sufficient to establish an unconstitutional policy or custom."  *De Verges v. Bd. of Cnty. Comm'rs*, 591 F. Supp. 3d 1066, 1073 (N.D. Okla. 2022) (citing *Okla. City v. Tuttle*, 471 U.S. 808, 821 (1985)).  For these reasons, Johnson's claims against the City for the alleged adoption of an unconstitutional policy, practice, or custom, fail.

## Conclusion

IT IS THEREFORE ORDERED that *Defendants Jerry Bullard and Wes Henderson's Motion to Dismiss* (Dkt. No. 22) is GRANTED and *Defendants Billy Wakefield and City of Skiatook's Motion to Dismiss* (Dkt. No. 23) is GRANTED. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.  Plaintiff may file a motion for leave to amend or supplement his complaint within 14 days of this order.  If no such motion is filed, judgment will be entered.

ORDERED this 17th day of February, 2026.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT